Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/15/2024 10:20 AM CDT

- 174 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
316 NEBRASKA REPORTS
NEBRASKA JOURNALISM TRUST v. DEPT. OF ENVT. & ENERGY
Cite as 316 Neb. 174

NEBRASKA JOURNALISM TRUST, DOING BUSINESS AS THE
FLATWATER FREE PRESS, APPELLEE, v. NEBRASKA
DEPARTMENT OF ENVIRONMENT AND ENERGY
AND SHAWNNA LARA, IN HER OFFICIAL CAPACITY
AS RECORDS MANAGER FOR THE NEBRASKA
DEPARTMENT OF ENVIRONMENT
AND ENERGY, APPELLANTS.

___ N.W.3d ___

Filed March 15, 2024.    No. S-23-155.

1. **Actions: Mandamus.** An action for a writ of mandamus is a law action.
2. **Judgments: Appeal and Error.** In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict, and an appellate court will not disturb those findings unless they are clearly erroneous.
3. **Judgments: Statutes: Appeal and Error.** Questions of law and statutory interpretation require an appellate court to reach a conclusion independent of the decision made by the court below.
4. **Mandamus: Statutes.** Where a writ of mandamus is specifically provided as a remedy by special statute, the general rules for a mandamus action, which conflict with the special statute, do not apply.
5. **Statutes.** It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute.
6. **Mandamus: Records: Fees.** A requester of public records who is provided with a fee estimate that contains charges unauthorized by Neb. Rev. Stat. § 84-712 (Reissue 2014) may file for speedy relief by a writ of mandamus.
7. **Mandamus: Proof: Fees.** A party seeking a writ of mandamus under Neb. Rev. Stat. § 84-712.03 (Cum. Supp. 2022) regarding the denial or content of a fee estimate has the burden to satisfy three elements: (1) The requesting party is a citizen of the state or other person interested in the examination of the public records, (2) the requesting party

- 175 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
NEBRASKA JOURNALISM TRUST v. DEPT. OF ENVT. & ENERGY
Cite as 316 Neb. 174

sought to obtain a copy of a public record as defined by Neb. Rev. Stat. § 84-712.01 (Reissue 2014), and (3) the requesting party was denied a fee estimate or was provided with a fee estimate that includes a fee the requesting party asserts is unauthorized by Neb. Rev. Stat. § 84-712(3) (Reissue 2014). Thereafter, if the public body holding the record wishes to oppose the issuance of a writ of mandamus, the public body must show, by clear and conclusive evidence, that the fees charged are authorized by § 84-712(3).

8. **Legislature: Statutes: Intent: Records.** In enacting the public records statutes, the Legislature has determined that the welfare of the people is best served through liberal public disclosure of the records of the three branches of government.

9. **Statutes: Records.** The overall purpose of the public records statutes is to empower and authorize interested persons to examine public records.

10. **Statutes: Legislature: Intent.** The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.

11. **Statutes: Appeal and Error.** Statutory language must be given its plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous.

12. **Records: Fees.** In fulfilling a public records request, a public body may not charge a fee for the first 4 cumulative hours of time its staff members spend searching, identifying, physically redacting, or copying.

13. **Statutes: Appeal and Error.** To give effect to all parts of a statute, an appellate court will attempt to reconcile different provisions so they are consistent, harmonious, and sensible, and will avoid rejecting as superfluous or meaningless any word, clause, or sentence.

14. **Records: Fees: Attorneys at Law.** In fulfilling a public records request, a public body may not charge a fee for an attorney's services to review the requested records for a legal basis to withhold them.

15. **Statutes: Intent.** A court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose.

16. **Statutes: Courts: Legislature: Public Policy.** A court's proper role is to interpret statutes and clarify their meaning, and it is the Legislature's function through the enactment of statutes to declare what is the law and public policy of this state.

17. **Records: Fees.** The plain language of Neb. Rev. Stat. § 84-712 (Reissue 2014) permits a public body to charge a fee for time spent by nonattorney employees, in excess of 4 cumulative hours, reviewing requested public

- 176 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
NEBRASKA JOURNALISM TRUST v. DEPT. OF ENVT. & ENERGY
Cite as 316 Neb. 174

records for a statutory basis to withhold one or more of the records in whole or in part.

Appeal from the District Court for Lancaster County: Ryan S. Post, Judge. Affirmed in part, and in part vacated and remanded for further proceedings.

Michael T. Hilgers, Attorney General, Eric J. Hamilton, and Christian Edmonds for appellants.

Daniel J. Gutman, of Law Office of Daniel Gutman, L.L.C., for appellee.

Derek A. Aldridge, of Perry, Guthery, Haase & Gessford, P.C., L.L.O., for amici curiae League of Nebraska Municipalities et al.

Marnie A. Jensen, Alexa B. Barton, and Aubrey Wells, of Husch Blackwell, L.L.P., for amicus curiae The Goldwater Institute.

Brian J. Fahey, of Fraser Stryker, P.C., L.L.O., for amici curiae Reporters Committee for Freedom of the Press et al.

Heavican, C.J., Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

## I. INTRODUCTION

This appeal presents two novel questions regarding the use of a writ of mandamus to enforce the public records statutes[1] regarding agency fee estimates. In both instances, we must implement policy choices previously made by the Legislature. First, can mandamus be used? Based on the plain statutory language, it can. Second, where an electronic, keyword search locates requested emails, does the "special service charge" of

[1] See Neb. Rev. Stat. §§ 84-712 to 84-712.09 (Reissue 2014 & Cum. Supp. 2022).

- 177 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
316 NEBRASKA REPORTS
NEBRASKA JOURNALISM TRUST v. DEPT. OF ENVT. & ENERGY
Cite as 316 Neb. 174

§ 84-712(3)(c) include the agency's nonattorney time, exceeding 4 hours, to determine whether they may be withheld? Again, based on the statutory language, it does. We affirm in part, and in part vacate and remand for further proceedings.

## II. BACKGROUND

### 1. PUBLIC RECORDS REQUESTS
### AND RESPONSES

Nebraska Journalism Trust, doing business as The Flatwater Free Press (Flatwater), is a Nebraska nonprofit organization focused on investigations and feature stories. This appeal involves its requests for public records from the Nebraska Department of Environment and Energy (agency) and its records manager (manager) (collectively NDEE). Flatwater sought emails to or from the agency's staff members containing any of the keywords "nitrate," "nutrient," "fertilizer," or "nitrogen."

Initially, Flatwater requested such emails "with all natural resources districts" over a 12-year period. The manager cautioned that the request was "quite broad and may be costly" and worked with Flatwater to narrow the scope of the request. Flatwater shortened the timeframe by almost 7 years. The manager estimated the cost to be $2,000, explaining:

> Searching email is a manual process, so while narrowing the timeframe may reduce the estimate by some, it still involves over 200 people who will perform four separate searches, review search results to ensure the record is responsive to the request and determine whether there is any basis or requirement to keep certain records, or portions of records, confidential under the appropriate Nebraska statutes. Pertinent records will then have to be provided to Records Management to be compiled and presented to [Flatwater].

Flatwater then transmitted an updated public records request to NDEE. In an effort to "make the search a little

- 178 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
316 NEBRASKA REPORTS
NEBRASKA JOURNALISM TRUST v. DEPT. OF ENVT. & ENERGY
Cite as 316 Neb. 174

easier," the updated request sought "emails to and from only certain divisions and sections" of the agency. However, it eliminated the requirement that the emails be sent or received by a natural resources district. The record is not clear whether those two changes increased or decreased the number of possible emails. Flatwater's request sought emails containing any of the four keywords sent or received by the agency's staff in six named divisions for 5 years 5½ months, along with any attachments.

The manager responded with an estimate of the total actual cost of providing the copies. She stated, "[W]hen we receive a check in the amount of $44,103.11, we will begin our search for the requested records." The cost estimate included a breakdown of the number of agency staff in each position, the hourly rate of each, and the estimated number of hours per employee. The estimate showed a cost of thousands of dollars for 102 employees to search, analyze, and save emails with the four keywords. Then, it approximated that a records supervisor would spend 12 hours reviewing those emails to ensure the email was responsive to the request, to determine whether there was a basis to keep the email confidential, and to prepare a flash drive with copies of pertinent emails.

The parties communicated several times as Flatwater tried to negotiate a lower cost estimate. The manager informed Flatwater that she asked four employees to search their emails for the term "nitrate," which resulted in responsive emails of 42, 48, 996, and 1,070. Although the Office of the Chief Information Officer (OCIO) could perform the search and provide NDEE with emails containing the keywords, the manager cautioned that "each message must be reviewed by the individual employee before it is provided to [Flatwater]." The manager subsequently informed Flatwater that because "our staff will need to review their own email to determine which email messages are public records pursuant to . . . §§ 84-712 to 84-712.09, having OCIO perform a search will not make the process more efficient." The manager elaborated: "[A]sking

- 179 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
NEBRASKA JOURNALISM TRUST v. DEPT. OF ENVT. & ENERGY
Cite as 316 Neb. 174

the OCIO to perform the searches will add cost to the estimate rather than reduce the cost. OCIO charges $90/hour for their work. Staff running the search in Outlook is not time consuming. Reviewing individual messages is what takes the time." In a later communication, the manager emphasized that the agency was "not seeking the services of their attorney to find a basis to withhold the information" and that "[t]he review is being performed by agency staff."

## 2. Petition for Public Records
## Writ of Mandamus

Pursuant to § 84-712.03, Flatwater filed a verified petition for a writ of mandamus against NDEE. It alleged that NDEE's cost estimate did not comply with Nebraska's public records statutes. According to Flatwater, NDEE cannot charge for any costs associated with determining if a document is the subject of ongoing litigation or if the document falls within statutory exceptions to the public records statutes. Flatwater requested the issuance of a peremptory writ of mandamus commanding NDEE to provide a legally accurate cost estimate in response to the public records request.

The district court issued an alternative writ of mandamus. It ordered NDEE either to provide a cost estimate to Flatwater in compliance with § 84-712(3)(c) or to show cause why a peremptory writ of mandamus should not issue by filing a written answer to the verified petition.

NDEE submitted a certificate of verification in response. First, the agency asserted that it was entitled to sovereign immunity. Second, the manager alleged that she demonstrated compliance with the alternative writ by filing the certificate of verification. The manager attached her affidavit, which included as an attachment a copy of her communications with Flatwater, as well as the cost estimate. Prior to trial, the district court granted the agency's request to substitute its current records manager for its former records manager.

- 180 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
NEBRASKA JOURNALISM TRUST v. DEPT. OF ENVT. & ENERGY
Cite as 316 Neb. 174

### 3. Trial

The court received testimonial and documentary evidence at trial. The evidence included the communications between Flatwater and the manager discussed above. The former manager testified about the search process to fulfill the request. She explained: "The employee would have to go to search their email and then the results of the nitrates for instance or nutrient. They would have to read all of the emails that came up as hits to that key word to be sure that it was responsive to the request." Further, NDEE "needed to make sure there were no trade secrets that were being exposed, and attorney[-]client privilege documents."

### 4. Order

In the court's written order, it first determined that the agency was shielded by sovereign immunity and denied Flatwater's request for a writ as to the agency. It next determined that Flatwater could pursue a writ of mandamus against the manager, rejecting NDEE's argument that mandamus was improper because other remedies were available.

Turning to the estimate of the expected cost of the copies, the court construed § 84-712(3)(c) to mean that the special service charge for labor did not "permit a fee for nonattorney employees to review" documents. It read the statute to mean that the cost was limited to "time spent, in excess of four cumulative hours, 'searching, identifying, physically redacting, or copying.'" The court observed that the Legislature did not include "'[r]eviewing'" in that list. Thus, the court stated that "other than for time spent 'physically redacting,' Nebraska law does not allow public officials to charge fees for time spent determining whether to make records unavailable." The court also stated that Flatwater's request sought "electronic documents containing a keyword that can easily be searched and identified without any additional review" and that "[o]nce the documents have been searched for and identified, those steps are complete."

- 181 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
316 NEBRASKA REPORTS
NEBRASKA JOURNALISM TRUST v. DEPT. OF ENVT. & ENERGY
Cite as 316 Neb. 174

Ultimately, the court's order granted Flatwater's request for a writ of mandamus for the manager to provide an estimate of the expected cost of the copies under § 84-712. The court subsequently issued a peremptory writ of mandamus and entered an order awarding Flatwater attorney fees and costs.

NDEE appealed, and we granted its petition to bypass review by the Nebraska Court of Appeals.[2]

## III. ASSIGNMENTS OF ERROR

NDEE assigns that the district court erred in concluding (1) that mandamus is a proper action for a challenge to a fee estimate and (2) that fees for time spent reviewing documents are not authorized.

## IV. STANDARD OF REVIEW

[1-3] An action for a writ of mandamus is a law action.[3] In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict, and an appellate court will not disturb those findings unless they are clearly erroneous.[4] However, questions of law and statutory interpretation require an appellate court to reach a conclusion independent of the decision made by the court below.[5]

## V. ANALYSIS

### 1. Mandamus

NDEE argues that mandamus is unavailable to challenge a fee estimate regarding a public records request. We have not previously considered this specific question.

But we have generally addressed the availability of mandamus in connection with a public records request. In *State*

---

[2] See Neb. Rev. Stat. § 24-1106(2) (Cum. Supp. 2022).

[3] *Nebraska Republican Party v. Shively*, 311 Neb. 160, 971 N.W.2d 128 (2022).

[4] *State ex rel. BH Media Group v. Frakes*, 305 Neb. 780, 943 N.W.2d 231 (2020).

[5] *Frederick v. City of Falls City*, 289 Neb. 864, 857 N.W.2d 569 (2015).

- 182 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
NEBRASKA JOURNALISM TRUST v. DEPT. OF ENVT. & ENERGY
Cite as 316 Neb. 174

*ex rel. Adams Cty. Historical Soc. v. Kinyoun*,[6] a case not cited by the parties, we considered the traditional rules of mandamus actions, recognized the scope of relief conferred by a public records statute, and rejected arguments similar to those advanced here.

In that case, we observed that traditionally, mandamus was a law action and was defined as an extraordinary remedy, not a writ of right, issued to compel the performance of a purely ministerial act or duty, imposed by law upon an inferior tribunal, corporation, board, or person, where (1) the relator has a clear right to the relief sought, (2) there is a corresponding clear duty existing on the part of the respondent to perform the act, and (3) there is no other plain and adequate remedy available in the ordinary course of law.

But we then stated that Nebraska's public records statutes provided the appropriate relief if a request for public records is denied, which relief included either filing for a writ of mandamus in the district court or petitioning the Attorney General to review the matter.[7] We observed that in any suit filed under the public records statutes, § 84-712.03(2) conferred upon the district court jurisdiction to "'enjoin the public body from withholding records, to order the disclosure, and to grant such other equitable relief as may be proper.'"[8]

Next, we rejected the records custodian's arguments relying upon traditional rules of mandamus. The custodian asserted that release of the information was not purely ministerial, that the requesting party had no clear right to the information requested, that the custodian had no duty to release the names, and that the requesting party had other remedies available. But we relied upon the plain language of § 84-712.03 to the contrary.

---

[6] See *State ex rel. Adams Cty. Historical Soc. v. Kinyoun*, 277 Neb. 749, 765 N.W.2d 212 (2009).

[7] See *id.*

[8] *Id.* at 752-53, 765 N.W.2d at 216 (quoting § 84-712.03(2)).

- 183 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
NEBRASKA JOURNALISM TRUST v. DEPT. OF ENVT. & ENERGY
Cite as 316 Neb. 174

We have followed that approach more recently. For example, we declared that "a person who has been denied access to a public record may file for a writ of mandamus under § 84-712.03 *whether or not any other remedy is also available*."[9]

[4] We conclude that where a writ of mandamus is specifically provided as a remedy by special statute, the general rules for a mandamus action, which conflict with the special statute, do not apply. Other authorities have reached similar conclusions.[10]

Here, NDEE asserts that in order to challenge the fee estimate in this public records request, Flatwater needed to petition the Attorney General or to bring a declaratory judgment action and seek equitable relief. Flatwater responds that mandamus relief is expressly authorized by statute. Both parties rely on the language of § 84-712.03.

In § 84-712.03, the Legislature provided remedies for a denial of rights conferred by specified public records statutes. Section 84-712.03(1) states:

> Any person denied any rights granted by sections 84-712 to 84-712.03 may elect to:
>
> (a) File for speedy relief by a writ of mandamus in the district court within whose jurisdiction the state, county, or political subdivision officer who has custody of the public record can be served; or
>
> (b) Petition the Attorney General to review the matter to determine whether a record may be withheld from public inspection or whether the public body that is custodian of such record has otherwise failed to comply

---

[9] See *Jacob v. Nebraska Bd. of Parole*, 313 Neb. 109, 123, 982 N.W.2d 815, 828 (2022) (emphasis supplied).

[10] See, 55 C.J.S. *Mandamus* § 9 (2021); *Jazz Casino Company, L.L.C. v. Bridges*, 223 So. 3d 488 (La. 2017); *Firefighters' Relief Fund v. Houston*, 466 S.W.3d 182 (Tex. App. 2015). But see, *State ex rel. Longman v. Kachelmacher*, 255 Minn. 255, 96 N.W.2d 542 (1959); *Moore v. Stahowiak*, 212 Wis. 2d 744, 569 N.W.2d 711 (Wis. App. 1997).

- 184 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
NEBRASKA JOURNALISM TRUST v. DEPT. OF ENVT. & ENERGY
Cite as 316 Neb. 174

with such sections, including whether the fees estimated or charged by the custodian are actual added costs or special service charges as provided under section 84-712. This determination shall be made within fifteen calendar days after the submission of the petition. If the Attorney General determines that the record may not be withheld or that the public body is otherwise not in compliance, the public body shall be ordered to disclose the record immediately or otherwise comply. If the public body continues to withhold the record or remain in noncompliance, the person seeking disclosure or compliance may (i) bring suit in the trial court of general jurisdiction or (ii) demand in writing that the Attorney General bring suit in the name of the state in the trial court of general jurisdiction for the same purpose. If such demand is made, the Attorney General shall bring suit within fifteen calendar days after its receipt. The requester shall have an absolute right to intervene as a full party in the suit at any time.

[5] The plain language of § 84-712.03(1) provides for an election of remedies. The statute specifically states that a person denied rights "*may elect to*: (a) [f]ile for . . . a writ of mandamus . . . *or* (b) [p]etition the Attorney General . . . ."[11] It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute.[12] Thus, we cannot ignore the Legislature's explicit authorization of relief by mandamus.

Historically, mandamus was the only remedy provided by the public records statutes to seek redress for a denial of access to public records.[13] In 1979, the Legislature added the

---

[11] § 84-712.03 (emphasis supplied).

[12] *Angel v. Nebraska Dept. of Nat. Resources*, 314 Neb. 1, 988 N.W.2d 507 (2023).

[13] See § 84-712.03 (Reissue 1966).

- 185 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
NEBRASKA JOURNALISM TRUST v. DEPT. OF ENVT. & ENERGY
Cite as 316 Neb. 174

option to petition the Attorney General[14] and, in a different statute, provided for the "enforce[ment] by equitable relief, whether or not any other remedy is also available."[15] But by adding the option to petition the Attorney General, the Legislature in no way diminished the ability to seek a writ of mandamus. And the subsequent inclusion in § 84-712.03(1) (b) of "the fees estimated" or "special service charges" as a specific matter that a person could ask the Attorney General to review likewise does nothing to eliminate the option to seek a writ of mandamus for a denial of rights under the specified public records statutes.

Drawing on the denial of rights component of § 84-712.03(1), NDEE contends that mandamus is limited to the denial of public records. It argues that a public body does not deny access to records in estimating fees. But § 84-712.03(1) authorizes mandamus for the denial of "*any rights* granted by sections 84-712 to 84-712.03." (Emphasis supplied.) The denial of rights may include the denial of *records* or *access* to records, but it is not so limited.

[6] Among the rights granted in §§ 84-712 to 84-712.03 is the right to obtain copies of public records for a fee which "shall not exceed the actual added cost of making the copies available."[16] Section 84-712(3)(c) expounds on charges that may not be included in the actual added cost or in a special service charge. To charge a fee that includes costs which § 84-712 specifies shall not be included would be to deny rights granted by § 84-712. We hold that a requester of public records who is provided with a fee estimate that contains charges unauthorized by § 84-712 may file for speedy relief by a writ of mandamus.

We have previously set forth the burden for a party seeking a writ of mandamus in a public records dispute regarding

[14] See 1979 Neb. Laws, L.B. 86, § 3.

[15] *Id.*, § 7 (codified at § 84-712.07).

[16] § 84-712(3)(b).

- 186 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
316 NEBRASKA REPORTS
NEBRASKA JOURNALISM TRUST v. DEPT. OF ENVT. & ENERGY
Cite as 316 Neb. 174

the denial of access to public records.[17] But we have not articulated the burden for a party seeking a writ of mandamus in a public records dispute regarding the denial or content of a fee estimate.

When we first established the burden for a party seeking a writ of mandamus concerning the denial of access to public records, we recognized that § 84-712.03 places the burden of proof on the party attempting to withhold records.[18] The statute specifies that "the burden is on the public body to *sustain its action*."[19] We reasoned that although the burden is appropriately placed on the public body to show that requested records fit within a statutory exception to the disclosure requirement, the requesting party still has the initial responsibility to demonstrate that the record qualifies as a public record.[20] Similar burdens should apply when a writ of mandamus is sought regarding the denial or content of a fee estimate.

[7] We now hold that a party seeking a writ of mandamus under § 84-712.03 regarding the denial or content of a fee estimate has the burden to satisfy three elements: (1) The requesting party is a citizen of the state or other person interested in the examination of the public records, (2) the requesting party sought to obtain a copy of a public record as defined by § 84-712.01, and (3) the requesting party was denied a fee estimate or was provided with a fee estimate that includes a fee the requesting party asserts is unauthorized by § 84-712(3). Thereafter, if the public body holding the record wishes to oppose the issuance of a writ of mandamus, the public body must show, by clear and conclusive evidence, that the fees charged are authorized by § 84-712(3).

---

[17] *State ex rel. BH Media Group v. Frakes, supra* note 4.

[18] See *State ex rel. Neb. Health Care Assn. v. Dept. of Health*, 255 Neb. 784, 587 N.W.2d 100 (1998), *disapproved, State ex rel. BH Media Group v. Frakes, supra* note 4.

[19] § 84-712.03(2) (emphasis supplied).

[20] See *State ex rel. Neb. Health Care Assn. v. Dept. of Health, supra* note 18.

- 187 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
NEBRASKA JOURNALISM TRUST v. DEPT. OF ENVT. & ENERGY
Cite as 316 Neb. 174

There is no dispute that Flatwater satisfied its initial burden. But whether NDEE then satisfied its burden depends upon the correct interpretation of § 84-712(3), which is the subject of NDEE's second assignment of error.

NDEE's argument that mandamus is unavailable to challenge a fee estimate alleged to include unauthorized charges lacks merit. We affirm that portion of the district court's order allowing Flatwater to pursue a remedy through mandamus. And because Flatwater has not challenged the court's determination that the agency was shielded by sovereign immunity, we likewise affirm the denial of Flatwater's request for a writ as to the agency.

## 2. Fees for Document Review Time

The key question is whether a public agency, in fulfilling a public records request, may charge for time spent by nonattorney staff to review the requested records prior to disclosure. Before resolving the issue, we start with an overview concerning public records and a discussion of statutory provisions concerning fees.

### (a) Public Records Overview

[8,9] In enacting the public records statutes, the Legislature has determined that the welfare of the people is best served through liberal public disclosure of the records of the three branches of government.[21] The overall purpose of the public records statutes is to empower and authorize interested persons to examine public records.[22]

With one important exception, the Legislature defined public records to include "all records and documents, regardless of physical form, of or belonging to this state, any county, city, village, political subdivision, or tax-supported district in this state, or any agency, branch, department, board, bureau,

---

[21] *Jacob v. Nebraska Bd. of Parole, supra* note 9.

[22] See § 84-712(1).

- 188 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
NEBRASKA JOURNALISM TRUST v. DEPT. OF ENVT. & ENERGY
Cite as 316 Neb. 174

commission, council, subunit, or committee of any of the foregoing."[23]

The Legislature recognized that not every governmental record should be viewable by the public. It provided that records and documents are not public records "when any other statute expressly provides that particular information or records shall not be made public."[24] Outside of the public records statutes, Nebraska laws too numerous to cite either explicitly declare that certain records are not public records subject to disclosure under the public records statutes or expressly make particular information confidential.

The Legislature set forth procedures for accessing public records. It generally provided that interested persons can examine public records during the public body's ordinary business hours for free.[25] And if they bring their own copying or photocopying equipment, interested persons can make their own copies of the records free of charge.[26] Another way to procure public records is to submit a written request to the records custodian for access to or copies of a public record.[27] Upon receipt of such a request, the custodian of the record shall provide "an estimate of the expected cost of the copies."[28] If the estimated cost exceeds $50, a public body may require a deposit prior to fulfilling the request.[29] We turn to the fee provisions of § 84-712.

### (b) Fees

Section 84-712(3)(b) empowers the public body to "charge a fee for providing copies of such public record." It specifies

---

[23] § 84-712.01(1).

[24] *Id.*

[25] See § 84-712(1).

[26] See § 84-712(1) and (2).

[27] See § 84-712(4).

[28] *Id.*

[29] See § 84-712(3)(f).

- 189 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
316 NEBRASKA REPORTS
NEBRASKA JOURNALISM TRUST v. DEPT. OF ENVT. & ENERGY
Cite as 316 Neb. 174

that "[e]xcept as otherwise provided by statute, [the] fee shall not exceed the actual added cost of making the copies available."[30]

Section 84-712(3)(b) elaborates on "actual added cost," depending on whether the request involves photocopies, printouts of computerized data on paper, or electronic data. For photocopies, the actual added cost "may include a reasonably apportioned cost of the supplies, such as paper, toner, and equipment, used in preparing the copies."[31] It may also include "any additional payment obligation of the custodian for time of contractors necessarily incurred to comply with the request for copies."[32] For printouts of computerized data, the actual added cost "shall include the reasonably calculated actual added cost of computer run time and the cost of materials for making the copy."[33] For electronic data, the actual added cost

> shall include the reasonably calculated actual added cost of the computer run time, any necessary analysis and programming by the public body, public entity, public official, or third-party information technology services company contracted to provide computer services to the public body, public entity, or public official, and the production of the report in the form furnished to the requester.[34]

Building on § 84-712(3)(b), the Legislature addressed time and activity components for the actual added cost, introduced the "special service charge," and excluded charges for an attorney's services in § 84-712(3)(c). The subsection states:

> The actual added cost used as the basis for the calculation of a fee for records shall not include any charge

---

[30] § 84-712(3)(b).

[31] § 84-712(3)(b)(i).

[32] *Id.*

[33] § 84-712(3)(b)(ii).

[34] § 84-712(3)(b)(iii).

- 190 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
316 NEBRASKA REPORTS
NEBRASKA JOURNALISM TRUST v. DEPT. OF ENVT. & ENERGY
Cite as 316 Neb. 174

for the existing salary or pay obligation to the public officers or employees with respect to the first four cumulative hours of searching, identifying, physically redacting, or copying. A special service charge reflecting the calculated labor cost may be included in the fee for time required in excess of four cumulative hours, since that large a request may cause some delay or disruption of the other responsibilities of the custodian's office, except that the fee for records shall not include any charge for the services of an attorney to review the requested public records seeking a legal basis to withhold the public records from the public.[35]

The statutory language evinces the Legislature's attempt to balance the public's interest in the right of access to public records with the public body's interest in not being unduly burdened in providing such access. The Legislature specified no labor costs for the first 4 hours of activity searching, identifying, physically redacting, or copying. But it recognized that voluminous requests could be disruptive to the public body. Thus, it allowed a special service charge for labor costs to account for time required in excess of 4 cumulative hours.

(c) Nonattorney Review Time

With this background, we turn to NDEE's fee estimate of over $44,000, primarily for time spent by nonattorney staff to review requested records. Whether such costs are allowed is a matter of statutory interpretation.

[10,11] The fundamental objective of statutory interpretation is to ascertain and carry out the Legislature's intent.[36] Statutory language must be given its plain and ordinary meaning, and an appellate court will not resort to interpretation

---

[35] § 84-712(3)(c).

[36] See *Fountain II v. Douglas Cty. Bd. of Equal.*, 315 Neb. 633, 999 N.W.2d 135 (2024).

- 191 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
NEBRASKA JOURNALISM TRUST v. DEPT. OF ENVT. & ENERGY
Cite as 316 Neb. 174

to ascertain the meaning of statutory words which are plain, direct, and unambiguous.[37]

No party has argued that § 84-712 is ambiguous. A statute is ambiguous if it is susceptible of more than one reasonable interpretation, meaning that a court could reasonably interpret the statute either way; otherwise, the statute is unambiguous.[38] In order for a court to inquire into a statute's legislative history, that statute in question must be open to construction, and a statute is open to construction when its terms require interpretation or may reasonably be considered ambiguous.[39] Because we do not read § 84-712 to have more than one reasonable interpretation, we focus on the language used and do not consult legislative history.

[12] The statutory language is clear that in fulfilling a public records request, a public body may not charge a fee for the first 4 cumulative hours of time its staff members spend searching, identifying, physically redacting, or copying.[40] From this language, it necessarily follows that such a fee may be charged for time exceeding 4 hours spent searching, identifying, physically redacting, or copying.

[13] Section 84-712(3)(c) specifies that if fulfilling a request entails more than 4 cumulative hours, "the calculated labor cost" may be included in the fee as a "special service charge." To give effect to all parts of a statute, an appellate court will attempt to reconcile different provisions so they are consistent, harmonious, and sensible, and will avoid rejecting as superfluous or meaningless any word, clause, or sentence.[41] Reading the special service charge provision in conjunction with the sentence immediately preceding it—the

---

[37] See *id.*

[38] *Id.*

[39] *Heist v. Nebraska Dept. of Corr. Servs.*, 312 Neb. 480, 979 N.W.2d 772 (2022).

[40] See § 84-712(3)(c).

[41] *Angel v. Nebraska Dept. of Nat. Resources, supra* note 12.

- 192 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
NEBRASKA JOURNALISM TRUST v. DEPT. OF ENVT. & ENERGY
Cite as 316 Neb. 174

sentence addressing the first 4 cumulative hours of "searching, identifying, physically redacting, or copying"[42]—the special service charge includes costs for the existing salary or pay obligation to public officers or employees after the first 4 cumulative hours of searching, identifying, physically redacting, or copying.

[14] The statutory language is also clear that in fulfilling a public records request, a public body may not charge a fee for an attorney's services to review the requested records for a legal basis to withhold them.[43] Had the Legislature intended to exclude time spent by any employee reviewing the records for a legal basis to withhold them, it could have done so. But the statute specifically limited the exclusion to "services of an attorney." And we cannot read those words out of the statute.

[15] A court must look at the statutory objective to be accomplished, the problem to be remedied, or the purpose to be served, and then place on the statute a reasonable construction which best achieves the purpose of the statute, rather than a construction defeating the statutory purpose.[44] Section 84-712(3)(b)'s limitation of a fee for copies to "actual added cost" must not be read in isolation. Section 84-712(3)(c) begins by further defining "actual added cost" to include labor costs. And § 84-712(3)(b) itself provides an exception "as otherwise provided by statute." Subsection (3)(c) effectively provides otherwise. The statutory scheme shows that the Legislature wished to make public records available, but allowed the public body to charge for the actual added cost of doing so, with the exception of the first 4 cumulative hours of searching, identifying, physically redacting, or copying. Presumably, the Legislature included the attorney fees exclusion in an effort to maintain access to public records at an affordable level.

---

[42] § 84-712(3)(c).

[43] See *id.*

[44] *Angel v. Nebraska Dept. of Nat. Resources, supra* note 12.

- 193 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
NEBRASKA JOURNALISM TRUST v. DEPT. OF ENVT. & ENERGY
Cite as 316 Neb. 174

Flatwater argues that just as a court cannot read words out of a statute, it cannot read the word "reviewing" into the activities specified in § 84-712(3)(c). But review is intrinsic to "searching, identifying, physically redacting, or copying."[45] A dictionary definition of "search" includes "to look at, read, or examine . . . for information."[46] The definitions of "review" include "to view, look at, or look over again."[47] While some portion of these functions could be performed without a review—e.g., a keyword computer search or running documents through a photocopier—identifying a document or physically redacting a document would require some level of review.

At oral arguments, NDEE highlighted that a statute[48] made certain of its records confidential. This statute applies to "[a]ny records or other information . . . concerning . . . air, water, or land contaminant sources, which records or information . . . relate to methods or processes entitled to protection as trade secrets . . . ."[49] Such records or information are excepted from the definition of public records in § 84-712.01. And only public records as defined by § 84-712.01 are subject to examination or copying under § 84-712.

To the extent review is needed to ensure that the public record is responsive to the request or that portions of the record are not exempt from disclosure, the review is part of the "actual added cost used as the basis for the calculation of a fee for records."[50] As NDEE noted, the Virginia Supreme Court reached a similar conclusion in agreeing with the trial

---

[45] § 84-712(3)(c).

[46] Webster's Encyclopedic Unabridged Dictionary of the English Language 1287 (1989).

[47] *Id.* at 1227.

[48] Neb. Rev. Stat. § 81-1527 (Reissue 2014).

[49] § 81-1527(1).

[50] § 84-712(3)(c).

- 194 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
NEBRASKA JOURNALISM TRUST v. DEPT. OF ENVT. & ENERGY
Cite as 316 Neb. 174

court that review is inherent in the process of ""“assessing, duplicating, supplying, or searching for the requested records"”'” and in concluding that in the context of its public records statute, "'searching' includes 'inquiring or scrutinizing' whether a disputed document can be released under federal and state law."[51]

We also find it significant that the Legislature included the prohibition on charging for the services of an attorney in the same sentence as the authorization for a special service charge reflecting the calculated labor cost. If Flatwater's contention were correct—i.e., that by using the words "searching, identifying, physically redacting, or copying," the Legislature did not intend to allow agencies to charge a fee for time spent reviewing documents for a legal basis to withhold them—this provision would have been unnecessary. Applying the principles of statutory interpretation, we cannot accept Flatwater's construction.

Our conclusion that "reviewing" is implicit in determining what may be disclosed as a public record is buttressed by other provisions. Section 84-712(4) provides that upon written request for a public record, the custodian must provide the requesting party an estimate of the expected cost of the copies and one of three things. Among those three options is a written denial of the records request in compliance with § 84-712.04 if there is a legal basis for denial of access to or copies of the record. In order to supply a legal basis for denial of access, a review would need to have occurred. Similarly, § 84-712.06 provides that "[a]ny reasonably segregable public portion of a record shall be provided to the public as a public record upon request *after deletion of the portions which may be withheld*." (Emphasis supplied.) Again, a public record would need to be reviewed to determine what portions to redact.

---

[51] See *Amer. Tradition Inst. v. Rector & Visitors*, 287 Va. 330, 345, 756 S.E.2d 435, 443 (2014).

- 195 -

Nebraska Supreme Court Advance Sheets
316 Nebraska Reports
NEBRASKA JOURNALISM TRUST v. DEPT. OF ENVT. & ENERGY
Cite as 316 Neb. 174

[16] Flatwater effectively urges that once a computer search is run for an email containing a specified word, it is entitled to receive a copy of that email without any examination whatsoever, or at least, as a matter of policy, the cost of examining flagged emails should be borne by the public and not by the requesting party. However sympathetic we might be to its policy arguments, that is not our role. A court's proper role is to interpret statutes and clarify their meaning, and it is the Legislature's function through the enactment of statutes to declare what is the law and public policy of this state.[52]

[17] Applying well-known rules of statutory interpretation and construction, we conclude that the plain language of § 84-712 permits a public body to charge a fee for time spent by nonattorney employees, in excess of 4 cumulative hours, reviewing requested public records for a statutory basis to withhold one or more of the records in whole or in part.

We conclude that the district court erred in its statutory interpretation of "special service charge." Because of that error, the court could not correctly determine whether the fee estimate included any charges unauthorized by § 84-712. Recalling the standard of review applicable to mandamus actions, the district court should make the determination in the first instance.

## VI. CONCLUSION

We affirm those portions of the district court's order finding statutory authorization to challenge an estimated fee via mandamus and quashing the petition as against the agency. With regard to the estimated fee here, the question before us is not what we think the policy should be, but what the Legislature—through the language in the statutes it enacted—adopted as the policy. We conclude the statutory language authorizes a public body to impose a special service charge for time spent by nonattorney employees, in excess of 4

---

[52] *In re Interest of Tyrone K.*, 295 Neb. 193, 887 N.W.2d 489 (2016).

- 196 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
316 NEBRASKA REPORTS
NEBRASKA JOURNALISM TRUST v. DEPT. OF ENVT. & ENERGY
Cite as 316 Neb. 174

cumulative hours, reviewing requested public records for a statutory basis to withhold one or more of the records in whole or in part. We vacate the district court's writ of mandamus and its order awarding attorney fees and costs, and remand the cause for further proceedings in conformity with this opinion.

AFFIRMED IN PART, AND IN PART VACATED AND
REMANDED FOR FURTHER PROCEEDINGS.

MILLER-LERMAN, J., not participating.